**Lonnie BAZAL and Kathy Bazal,
Plaintiffs–Appellees,**

v.

**Paul RHINES and Karen
Rhines, Defendants,**

and

**Marilyn Palma and Skogman Realty
Co., Defendants–Appellants.**

No. 98–0245.

Court of Appeals of Iowa.

June 23, 1999.

James W. Affeldt of Elderkin & Pirnie, P.L.C., Cedar Rapids, for appellants.

John C. Monroe of Titler & Monroe Law Firm, Cedar Rapids, for appellees.

Heard by SACKETT, C.J., and VOGEL and SCHLEGEL,* JJ.

### SCHLEGEL, S.J.

Defendants Marilyn Palma and Skogman Realty Company appeal a district court judgment entered against them on Lonnie and Kathy Bazal's claim for breach of fiduciary duty in connection with a failed real estate transaction. We affirm.

The Bazals decided to sell their home in Bowman Woods in June 1995. They listed their home with Dick Brown, a realtor with Skogman Realty Company.[1] He had been involved when the Bazals purchased the home and they believed Skogman had expertise in selling homes in Bowman Woods. Skogman and its affiliated companies developed Bowman Woods; Skogman was the exclusive listing agent for all new homes in Bowman Woods. The Bazals signed a Listing Agreement with Skogman on June 20, 1995, and received Skogman's Agency Policy Disclosure and Acknowledgment Form which provided that Skogman must disclose matters reasonably discoverable affecting the property value or desirability.

In mid-July 1995, Paul and Karen Rhines asked their realtor, Marilyn Palma, whether she knew of a home for sale in Bowman Woods which would meet their needs, including space for four dogs. Palma, also a realtor at Skogman, informed the Rhineses she believed the Bazals' home would meet their needs. The Bazals were never informed that the Rhineses required space for four dogs.

On July 22, 1995, the Bazals and the Rhineses agreed upon a cash price of $211,000 with a closing date of September 30, 1995. The Rhineses and the Bazals each signed a Consensual Dual Agency Agreement prepared by Skogman acknowledging that one Skogman realtor (Palma) was representing the Rhineses as buyers and a second Skogman realtor (Brown) was representing the Bazals as sellers in the transaction. The agreement further provided that Skogman would disclose all material defects in the property. Shortly thereafter, the Bazals made a commitment to purchase another home and immediately began making preparations to be out of their home by the closing date.

On September 10, 1995, the Rhineses' attorney, Michael Donohue, prepared a ti-

---

* Senior judge assigned by order pursuant to Iowa Code § 602.9206 (1997).

1. Brown is not a party to this lawsuit because he is deceased.

tle opinion which disclosed a restrictive covenant on the property limiting dog ownership to one per dwelling unit. Donohue wrote to Palma on September 20, 1995, noting the "dog clause" problem and suggested that waivers be obtained or other solutions be considered. Skogman's response, dated October 2, 1995, suggested the Rhineses had ulterior motives for raising the "dog clause" issue and they had simply changed their minds about purchasing the Bazals' home. None of Skogman's agents or employees took any further action to try to resolve the problem with the "dog clause;" Palma simply repeatedly told the Rhineses the "dog clause" was not a problem. The closing did not take place.

After their sale failed to close, the Bazals re-listed their home with Skogman for $216,000. The property ultimately sold for $201,000 on March 18, 1996. The Bazals had reduced the asking price on the home on Brown's advice and due to the financial pressure of owning two homes and paying two mortgages. The home proved difficult to sell due to the time of year and because it was empty.

The district court concluded the Bazals were entitled to recover damages from Palma and Skogman. The Bazals were awarded damages in the amount of $19,933.16 representing primarily a reduction in the sale price, additional property taxes, and interest. Palma and Skogman appeal.

■ **I. STANDARD OF REVIEW.** Law actions are reviewed for correction of errors at law. Iowa R.App.P. 4; *Waukon Auto Supply v. Farmers & Merchants Sav. Bank*, 440 N.W.2d 844, 846 (Iowa 1989). Where the trial court sits as the finder of fact, the court's findings have the effect of a jury verdict and bind us if substantial evidence supports them. *Waukon*, 440 N.W.2d at 846. Evidence is substantial when a reasonable mind could accept it as adequate to reach the same findings. *Id.*

**II. FIDUCIARY DUTIES.** Palma contends she owed no fiduciary duties to the Bazals to disclose the "dog clause." Palma and Skogman maintain they did not have a fiduciary duty to close the transaction. We disagree.

■ Real estate brokers assume a fiduciary relationship with their principals which creates a duty of fidelity and good faith. *Garren v. First Realty Ltd.*, 481 N.W.2d 335, 337 (Iowa 1992). By virtue of the Listing Agreement, the Agency Policy Disclosure and Acknowledgment Form, and the Consensual Dual Agency Agreement, Skogman and Palma had a fiduciary duty and a duty of good faith to the Bazals. Skogman and Palma had a duty to discover material facts regarding the property which were reasonably discoverable. Palma was aware of the "dog clause" but never informed the Rhineses about it, but should have.

■ In addition to the Consensual Dual Agency Agreement and the Agency Policy Disclosure and Acknowledgment Form, the National Association of Realtors Code of Ethics requires realtors to disclose material facts to the buyers and the sellers. *See Crutchley v. First Trust & Sav. Bank*, 450 N.W.2d 877, 880 (Iowa 1990) (proof of breach of standards specified in Code of Ethics establishes a violation of realtor's duties under Listing Agreement with seller). Under the facts in this case, the existence of the "dog clause" and the Rhineses' plan to bring four dogs to the property were material facts which should have, if known, been disclosed to all parties. There is substantial evidence to support the district court's finding that Palma failed to disclose these material facts.

■ Skogman and Palma also had a duty to use their best efforts to resolve any problems which arose and close the transaction. There is substantial evidence to support the district court's finding that Skogman and Palma did not use their best efforts to close the transaction.

**III. PROXIMATE CAUSE.** Palma and Skogman contend a breach of fiduciary

duty, if any, was not the proximate cause of the Bazals' damages. We disagree.

■ Palma argues that even if the failure to disclose the "dog clause" problem was a breach, it was not the proximate cause of damages because the Rhineses would never have made an offer. However, the evidence shows the Bazals could have sold the property to other interested parties under more favorable sale conditions if the property had not been off the market for two-and-one-half months in reliance upon the contract to sell their home to the Rhineses.

Palma also argues that even if the failure to close the transaction was a breach, it was not the proximate cause of damages because there was no evidence the suggested solution would have cured the "dog clause" problem. However, the evidence shows the Rhineses were willing to close the transaction if a solution to the "dog clause" problem could be found. Palma informed the Rhineses the "dog clause" was not a problem; no further action was taken to resolve the problem. Skogman's letter dated October 2, 1995, was counterproductive. Palma's and Skogman's failure to inform the Bazals about the "dog clause" problem prevented the Bazals from pursuing solutions themselves.

There is substantial evidence to support the district court's findings that defendants' breaches of duties owed to the Bazals were proximate causes of the Bazals' damages. We conclude the district court did not err in entering judgment against Palma and Skogman.

For these reasons, we affirm.

**AFFIRMED.**

ZIMMER, J., takes no part.